UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WARREN E. LAWSON,

       Plaintiff,

v.               Case No.  5:09-cv-23-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

       Defendant.

_____/

## ORDER

   Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits.[1] (Doc. 1.) The Commissioner has answered (Doc. 14), and both parties have filed briefs outlining their respective positions. (Docs. 19 & 20.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

   Plaintiff filed applications for a period of disability and disability insurance benefits in June 2004, alleging a disability onset date of January 15, 2004—which he later amended to October 1, 2004. (R. 50-55, 486, 601.) Plaintiff's application was denied initially and upon reconsideration. (R. 39-45.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 46.) The ALJ conducted an

---

[1] Although Plaintiff filed applications for a period of disability, disability insurance benefits and supplemental security income, he is only challenging the Commissioner's decision with respect to his application for disability insurance benefits.

administrative hearing on November 27, 2006. (R. 483-99.) The ALJ issued a decision unfavorable to Plaintiff on March 23, 2007. (R. 21-32.) After the Appeals Council denied Plaintiff's request for review and reopening (R. 6-7, 13-18), Plaintiff filed an action in this Court.[2]

The Court subsequently remanded the matter to the Commissioner for further consideration on January 18, 2008 pursuant to the Commissioner's motion to remand. (R. 525-27.) On remand, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings consistent with the Court's Order. (R. 528-31.) Pursuant to the Appeals Council's Order, a supplemental hearing was held on June 24, 2008 (R. 596-628), and the ALJ issued a decision partially favorable to Plaintiff on September 10, 2008. (R. 500-14.) Plaintiff now seeks review of this decision. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[4]

---

[2] Lawson v. Astrue, Case No. 5:07-cv-424-Oc-10GRJ.

[3] See 42 U.S.C. § 405(g).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); accord Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[9]

---

[5] Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

[7] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

The ALJ must follow five steps in evaluating a claim of disability.[10] First, if a claimant is working at a substantial gainful activity, he is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, he is disabled.[13] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[14] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the

---

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *See* Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

[12] Id. § 404.1520(c).

[13] Id. § 404.1520(d).

[14] Id. § 404.1520(e).

[15] Id. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

national economy.[17] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of

---

[17] Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[18] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[19] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[20] Walker, 826 F.2d at 1003.

[21] Wolfe, 86 F.3d at 1077-78.

introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[23]

### III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was forty six (46) years old at the time of the ALJ's decision on September 10, 2008. (R. 51, 500.) He has a tenth grade education, and has previous work experience as an automobile mechanic and a parts/service manager. (R. 30, 67, 600.) Plaintiff contends that he has been unable to work since October 1, 2004[24] due to chronic obstructive pulmonary disease, lupus, rheumatoid arthritis, carpal tunnel syndrome, degenerative disc disease, degenerative joint disease, hypertension, emphysema, and depression. (R. 63, 552, 601, 603-04.) Plaintiff is insured for benefits through June 30, 2011. (R. 554.)

In the ALJ's review of the record, including Plaintiff's testimony, medical records from several health care providers, and testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff suffers from degenerative disc disease of the cervical spine, carpal tunnel syndrome, chronic pain syndrome, asthma, arthritis, and major depression. (R. 507.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or

---

[22] *See* <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[23] *See* <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

[24] Plaintiff amended his alleged onset of disability date from January 15, 2004 to October 1, 2004. (R. 51, 486, 601.)

medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 509.)

The ALJ then found that between the date of alleged onset of disability and July 1, 2007, Plaintiff retained the RFC to perform the exertional demands of medium work with the ability to occasionally push or pull with his upper extremities, and with moderate limitations in his abilities to: carry out detailed instructions; maintain concentration for extended periods; and complete a normal work day and/or work week and perform at a consistent pace without a reasonable number of rest periods. (R. 509.) The ALJ further limited Plaintiff to avoiding concentrated exposure to vibration during that period of time. However, according to the ALJ, beginning on July 1, 2007, Plaintiff retained the RFC to perform the exertional demands of less than the full range of unskilled sedentary work on a sustained basis.

After finding that Plaintiff could not perform his past relevant work at any time since his alleged onset of disability, the ALJ applied Rule 201.19 of the Medical-Vocational Guidelines (the "grids")[25] as a "framework" and found that, as of July 1, 2007, Plaintiff 's RFC had significantly eroded such that he was unable to perform the full range of sedentary work on a sustained basis, and therefore, was disabled. However, with respect to Plaintiff's disability status prior to July 1, 2007, the ALJ consulted a vocational expert to determine the extent of the erosion of the unskilled medium occupational base caused by Plaintiff's non-exertional limitations and found that Plaintiff would have been able to perform the requirements of representative unskilled

---

[25] 20 C.F.R. § 404, subpt. P, app. 2.

occupations such as an office helper,[26] a parking lot attendant,[27] and/or a sales attendant.[28] (R. 512-13.) Because the ALJ concluded that, prior to July 1, 2007, Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy, he found Plaintiff was not disabled from the alleged onset date of disability through July 1, 2007. (R. 513.)

Plaintiff raises three issues in his appeal challenging the ALJ's determination that Plaintiff's impairments were not disabling prior to July 1, 2007. Because all three issues focus on the ALJ's consideration of Plaintiff's cervical spine impairment, the Court will limit its discussion of the evidence of record accordingly.

In support of Plaintiff's initial applications for social security benefits, he alleged he was disabled as a result of chronic obstructive pulmonary disease, emphysema, and carpal tunnel syndrome. (R. 63.) His first report of having a cervical spine disorder was in correspondence he prepared at the request of the Social Security Administration in February 2005 while appealing the Commissioner's decision to deny him benefits at which time he listed "bulging disc at C3-C4" as a new medical condition that had developed since completing his last disability report. (R. 108.)

Plaintiff saw Dr. Geoffery Roberts, his treating physician, several times between his initial visit in December 2003 and June 2007 – the last office visit of record. (R. 348-73, 403-28, 431-48, 449-74.) Over the course of Dr. Roberts' treatment of Plaintiff,

---

[26] DICTIONARY OF OCCUPATIONAL TITLES § 239.567-010 (4th ed. 1991).

[27] Id. § 915.473-010.

[28] Id. § 299.677-010.

Plaintiff's primary complaint was hip pain. (R. 348, 350, 361, 403, 406, 413, 414, 417.) Plaintiff also frequently complained of pain in his knees, shoulders, hands, right elbow, and/or generalized joint pain. (R. 352, 356, 361, 403, 406, 408, 417, 436.) Dr. Roberts attributed Plaintiff's pain to rheumatoid arthritis and lupus. Despite Plaintiff's regular office visits with Dr. Roberts, the office notes do not mention Plaintiff having any problems with his neck until January 2006 when Dr. Roberts noted that Plaintiff complained of having a stiff neck. (R. 410.) In early April 2006, Plaintiff complained that his neck pain was worse. (R. 458.) In a follow up visit later that month, Dr. Roberts noted that Plaintiff was doing "a lot better." (R. 408.) According to Dr. Roberts' office notes, Plaintiff did not report any further problems with his neck until May 2007 when Plaintiff complained of progressively worsening neck pain. (R. 436.)

In a letter dated March 24, 2005, and directed "to whom it may concern," Dr. Roberts opined that Plaintiff was unable to work secondary to "[cervical] spine neurological compromise" as revealed in the results of an MRI of Plaintiff's cervical spine performed in January 2004. However, Dr. Roberts further opined in the letter that Plaintiff may be able to return to work following orthopedic evaluation and treatment. (R. 357.)

In July 2007, and at the request of Plaintiff's attorney, Dr. Roberts completed a form entitled, "Treating Physician's Medical Assessment of Ability to do Work-Related Activities (Physical)" in which he opined that Plaintiff had several physical limitations attributable to Plaintiff's lupus and rheumatoid arthritis conditions. Dr. Roberts did not

specifically assign any limitations attributable to Plaintiff's cervical spine disorder. (R. 476-82.)

In July 2008, Dr. Roberts completed two additional forms at the request of Plaintiff's attorney. In both, Dr. Roberts was instructed to "answer each question as it relates to [Plaintiff's] condition from 7/12/07 to present." In the form entitled, "Clinical Assessment of Pain by Treating Physician," Dr. Roberts opined that Plaintiff suffered from severe and continuous pain due to Plaintiff's diagnoses of chronic pain syndrome, rheumatoid arthritis, lupus, and a bulging cervical disc. (R. 586-91.) In the form entitled, "Residual Functional Capacity Evaluation by Treating Physician," Dr. Roberts further opined that Plaintiff's ability to sit, stand, walk and/or lift were seriously limited as a result of his rheumatoid arthritis, lupus, degenerative disc disease, and carpal tunnel syndrome. (R. 592-94.)

Following Plaintiff's initial visit with Dr. Roberts in December 2003, Dr. Roberts referred Plaintiff to a neurologist for evaluation pursuant to Plaintiff's reported history of bilateral carpal tunnel syndrome and Plaintiff's complaints of severe pain and numbness in his arms and hands. (R. 360-61.) Thereafter, Plaintiff reported to Dr. Bharat Parikh on January 16, 2004 for evaluation of Plaintiff's complaints of neck and hand pain. Plaintiff reported a history of bilateral carpal tunnel syndrome with numbness and tingling in his hands and fingers. As a result, Plaintiff advised that he has difficulty opening jars and turning doorknobs. Plaintiff also complained of cervical pain radiating into his shoulders and hands bilaterally. Although Dr. Parikh did observe cervical tenderness upon palpation with paraspinal muscle spasms, his examination revealed no muscle atrophy

and full range of motion in Plaintiff's spine. Plaintiff's cranial nerves and motor systems were intact with full muscle power in both upper extremities. Plaintiff demonstrated a limited range of motion in his shoulders, a positive Tinel's sign, and decreased sensation in bilateral index and middle fingers. Dr. Parikh's impression was cervical pain, bilateral hand pain, and bilateral shoulder pain. Dr. Parikh sent Plaintiff for MRIs of both shoulders and his cervical spine in order to rule out a herniated disk at the C5-C6 level and/or rotator cuff problem versus bilateral carpal tunnel syndrome. (R. 266-67.)

In January 2004, MRIs of both of Plaintiff's shoulders were unremarkable (R. 268-69), and the MRI of Plaintiff's cervical spine revealed:

> evidence of a left lateral disc bulge with associated marginal osteophyte
> production seen at C3-C4. This results in flattening of the thecal sac and
> displacement of the spinal cord. There is significant compromise of the nerve root
> at this level on the left. No other bulging or herniated disc material is identified. . .
> . Impression: Disc spur complex on the left at C3-C4 with neurological
> compromise.

(R. 270.)

Dr. Edward Demmi performed a consultative examination of Plaintiff in October 2004 at the request of the Social Security Administration. Dr. Demmi's examination of Plaintiff revealed normal range of motion in the cervical spine, intact motor strength in the upper extremities bilaterally, and normal fine manipulation in the hands bilaterally. Plaintiff's cranial nerves were intact and there were no sensory deficits or muscle spasms noted. Despite the generally unremarkable physical exam, Dr. Demmi did observe diminished grip strength bilaterally. Dr. Demmi diagnosed Plaintiff with chronic

obstructive pulmonary disease, bilateral carpal tunnel syndrome, arthritis in multiple joints, and chronic depression. (R. 283-88.)

In May 2005, Plaintiff presented to Dr. Lawrence Field for a consultative examination. Among Plaintiff's several complaints, Plaintiff reported having neck pain "that comes and goes depending on activity" over the previous 18 months. Dr. Field reviewed Plaintiff's medical records—including the results of the January 2004 MRI of Plaintiff's cervical spine. Upon examination of Plaintiff, Dr. Field noted increased paravertebral muscle tone in the cervical and lumbar regions and a normal range of motion in the cervical spine except that there was a slight limitation in extension. Neurological examination revealed normal grip strength and fine manipulation bilaterally, negative Phalen and Tinel's signs and cranial nerves, muscle strength and sensation were intact. Dr. Field's impression was muscle strain of the cervical and lumbar spine and his assessment of Plaintiff was, "physically, there are no impairments." (R. 337-39.)

In January 2007, Plaintiff presented to the emergency room with complaints of chest pain and a persistent cough. Notably, while receiving treatment for his primary complaints, examination revealed no tenderness or spasm in Plaintiff's spinal muscles and full range of motion in his spine. (R. 468.)

## IV. **DISCUSSION**

Plaintiff's primary complaint on appeal is that the ALJ erred by failing to specifically identify Plaintiff's cervical disk bulge as a "severe" impairment at step two of the sequential analysis. Plaintiff also argues that the ALJ subsequently committed two

additional errors during the sequential evaluation as a direct result of this omission. According to Plaintiff, by failing to acknowledge the disc bulge as a severe impairment at step two, the ALJ "could no[t] help but fail to consider" the combined effects of all of Plaintiff's impairments when making the disability determination. Lastly, Plaintiff argues that the ALJ committed reversible error at step five of the sequential analysis by relying upon VE testimony that was based upon hypothetical questions that did not incorporate all of the limitations resulting from the combined effects of all of Plaintiff's impairments.

## A. The ALJ Did Not Find Plaintiff's Cervical Disc Bulge to Be Non-Severe.

Plaintiff argues that the ALJ committed legal error by failing to list Plaintiff's "left lateral disk bulge with associated marginal osteophyte production at C3-C4, resulting in flatt[en]ing of the thecal sac and displacement of the spinal cord, with significant compromise of the nerve root on the left" as a severe impairment at step two of the sequential analysis.[29] According to Plaintiff, this omission implies that the ALJ found the condition to be non-severe.

Contrary to Plaintiff's suggestion, the ALJ did not find the disc bulge to be a non-severe impairment at step two. Rather than stating the verbatim description of the lateral disk bulge of the cervical spine, which appeared in the MRI results, the ALJ found Plaintiff had a severe medical impairment involving his cervical spine – degenerative disc disease. He then went on to evaluate the functional limitations, including pain, resulting from the cervical issues. As such, although the ALJ did not

---

[29] This language is taken almost verbatim from the January 2004 report of the results of an MRI of Plaintiff's cervical spine. *See* (R. 270.)

include the precise MRI impression in his step two statement he identified, nonetheless, an impairment of the cervical spine at step two and went on to evaluate the effect of the impairment.

In addition to the fact that the ALJ did address the functional limitations, if any, from the cervical impairment, Plaintiff's argument that the ALJ erred by failing to include a verbatim description of the cervical disc bulge at step two also fails for other reasons. First, the fact that the ALJ did not list every impairment at step two (and in this case did not use the precise medical language which appeared in the results of the MRI) does not mean the ALJ found the disc impairment to be non-severe at step two nor does it mean he ignored it. At step two of the sequential evaluation the ALJ is required only to determine whether there is any severe impairment before proceeding with the next step in the sequential evaluation. Thus, a finding of any severe impairment is enough to satisfy the requirement of step two.[30]

Further, even assuming *arguendo* that the ALJ was required to include the entire medical description of the disc bulge at step two the failure to do so did not make any difference because the ALJ did not stop his analysis of the Plaintiff's cervical issues at step two but rather went on to discuss the cervical issues as part of the next step in the sequential evaluation.[31] Thus, any error was harmless.

---

[30] Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); *see also,* Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)(noting a failure to find a particular impairment was severe was not reversible error because the ALJ found other severe impairments.).

[31] Council v. Barnhart, No. 04-13128, slip op. at 4 (11th Cir. Dec. 28, 2004)(copy attached to Doc. 20 as Exhibit)( "[T]he ALJ could not have committed any error at step two because he found that [Plaintiff] had a severe impairment . . . and moved on to the next step in the evaluation, which is all that is required
(continued...)

Accordingly, for these reasons, the ALJ did not commit reversible error at step two of the sequential analysis simply because he did not include the precise verbatim description of Plaintiff's cervical issues, contained in the MRI report, in the listing of impairments at step two.

**B.      The ALJ Properly Considered the Cumulative Effects of All of Plaintiff's Impairments.**

Plaintiff also complains that the ALJ's failure to include the disc bulge at step two caused him to further err by failing to consider Plaintiff's impairments in combination.

Where a claimant alleges more than one impairment, the Commissioner has a duty to consider the cumulative effects of the impairments in making the determination as to whether the claimant is disabled.[32] Under the law in the Eleventh Circuit  this burden is met where the ALJ expressly states that he has considered all of the medical evidence and concludes that Plaintiff is not suffering from "an impairment, or a combination of impairments listed in Appendix 1, Subpart P."[33] In the instant case at step three of the sequential analysis, the ALJ concluded that, "[s]ince the alleged onset date of disability, the [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 509.)

---

[31](...continued)
at step two.")

[32] Jones v. Dep't of Health & Hum. Servs., 941 F.2d 1529, 1533 (11th Cir. 1991).

[33] Id.

15

In addition to the fact that the ALJ expressly considered at step three that the Plaintiff has not had an impairment "or combination of impairments," the ALJ went on and noted in assessing Plaintiff's RFC at step four of the sequential evaluation, that the ALJ had given "careful consideration of the entire record" including consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." This language alone directly contradicts Plaintiff's contention that the ALJ did not properly consider Plaintiff's impairments in combination when making his disability determination.

Furthermore, and contrary to the Plaintiff's assertion that the ALJ ignored Plaintiff's diagnosis of left lateral disc bulge, in his written decision the ALJ systematically addressed all of Plaintiff's alleged impairments and their corresponding effects on Plaintiff. Specifically, the ALJ referred to the results of the MRI of Plaintiff's spine performed in January 2004 by noting that "[a]n MRI scan of the cervical spine showed a disc spur complex at C3-4 with neurological compromise." (R. 508.)

The ALJ then went on to consider the functional limitations, including pain, resulting from Plaintiff's cervical spine disorder in his discussion of the medical evidence in the summary of the relevant portions of records obtained from Drs. Parikh, Roberts, Demmi, and Field. Indeed, if the ALJ had not considered Plaintiff's impairments in combination - as Plaintiff suggests - the ALJ could not have reached the partially favorable decision finding that, beginning in July 2007, Plaintiff was incapable of performing basic work activities on a sustained basis. (R. 511.)

In support of his determination that Plaintiff's impairments were not disabling prior to July 2007, the ALJ thoroughly reviewed the medical evidence. In particular the ALJ provided reasons supported by the evidence for his decision to give little weight to the conclusory opinion of Dr. Roberts as expressed in his March 2005 letter. The ALJ pointed out that the ultimate determination as to whether a claimant is "disabled" is reserved to the Commissioner.[34] The ALJ also noted that Dr. Roberts' opinion was not consistent with the clinical findings of Dr. Demmi and Dr. Field. Dr. Demmi's examination of Plaintiff was essentially unremarkable. Dr. Field acknowledged the abnormal MRI results in his report but concluded that based upon his examination of Plaintiff, as well as his review of Plaintiff's medical records, Plaintiff had no apparent physical limitations. Lastly, Dr. Roberts' March 2005 letter is inconsistent with his own office notes because there is no mention in Dr. Robert's office notes that Plaintiff had any cervical complaints until nearly a year after the letter was written.

Accordingly, contrary to Plaintiff's suggestion, the ALJ properly considered and discussed in his written decision all of Plaintiff's impairments in combination in making his disability determination, including Plaintiff's cervical disc issues.

## C. The Hypothetical Question Presented to the VE Adequately Describes All of Plaintiff's Impairments.

Lastly, Plaintiff argues that the hypothetical question posed to the VE was incomplete because the hypothetical did not include Plaintiff's left disc bulge.

[34] *See* SSR 96-9p.

Based on his careful consideration of the entire record, the ALJ determined that, prior to July 1, 2007, Plaintiff had the RFC to perform a limited range of medium work.[35] (R. 509.) At the hearing, the ALJ asked the VE the following hypothetical question:

> Q: We have a claimant who [is] a younger person with a tenth grade education, work experience [as previously described], and assume that I find from a non-exertional standpoint, his ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods and the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods are moderately limited. Moderate is defined as a slight limitation, but the person is still able to function satisfactorily. From a physical standpoint, he [is able] to lift and/or carry occasionally 50 pounds and frequently 25 pounds; stand and/or walk and/or sit about six hours in an eight hour workday; push and pull would be limited with the upper extremities; and environmental limitations, he should avoid concentrated exposure to vibration.
>
> . . .
>
> Are there any jobs in the national economy that this person would be able to perform with those restrictions?

(R. 624-25.) In response to the hypothetical—which essentially quoted the RFC the ALJ ultimately assigned to Plaintiff—the VE identified three representative occupations that

---

[35] 20 C.F.R. § 404.1567(c). The guidelines define medium work as follows: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . [he] can also do sedentary and light work." Id.

an individual with such limitations would be capable of performing: an office helper,[36] a parking lot attendant,[37] and a sales attendant.[38] (R. 625-26.)

The ALJ was not required to include a statement in the hypothetical that the Plaintiff had a left disc bulge. As discussed above, the ALJ properly considered the functional limitations resulting from Plaintiff's cervical spine disorder during his assessment of Plaintiff's RFC.

Moreover, other than asserting that the hypothetical was incomplete because it did not reference the disc bulge, Plaintiff fails to identify any limitations (attributable to Plaintiff's cervical spine condition) which should have, but were not, included in the hypothetical. Further, to extent Plaintiff argues that the ALJ should have included the actual diagnosis in the hypothetical – such an argument lacks merit. A hypothetical question is not deficient merely because it fails to include diagnostic terms or refer to specific medical conditions.[39] It is the ALJ, and not the VE, who is charged with the responsibility of evaluating the medical evidence to form an assessment of a claimant's RFC.[40] The VE's role is limited to assessing the availability of employment opportunities for a person with the RFC and vocational profile set forth in the hypotheticals posed by the ALJ.

---

[36] DICTIONARY OF OCCUPATIONAL TITLES § 239.567-010 (4th ed. 1991).

[37] Id. § 915.473-010.

[38] Id. § 299.677-010.

[39] See Webb v. Comm'r of Soc. Sec., 368 F.3d 629 (6th Cir. 2004).

[40] 20 C.F.R. § 404.1546(c).

Lastly, without any appreciable development of the argument,[41] and without citing to any legal authority, Plaintiff suggests that the ALJ's hypothetical was also defective because the ALJ erroneously defined in the hypothetical a "moderate inability" as a "slight limitation." As the Commissioner correctly points out, however, there does not appear to be a generally accepted definition for the term "moderate" in the context of evaluating disabilities under the Social Security Act. However, the ALJ, nonetheless, properly explained in the hypothetical that moderate meant Plaintiff was "still able to function satisfactorily." That statement is completely consistent with the evaluation of Plaintiff's RFC, which found that the Plaintiff was still able to function satisfactorily because his mental impairments were only moderate. [42]

In sum, the hypothetical presented to the VE fully incorporated all of the limitations associated with Plaintiff's RFC. Accordingly, the VE's testimony provides substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled prior to July 1, 2007 because Plaintiff could perform other work that was available in significant numbers in the national economy.

_____

[41] Plaintiff raises the issue in a footnote in his brief. (Doc. 19 p. 11 n.1.)

[42] *See, e.g.*, Lacroix v. Barnhart, 465 F.3d 881, 888 (8th Cir. 2006) (finding ALJ's determination that claimant was "still able to function satisfactorily" was consistent with a physician's assessment that claimant suffered from "moderate" mental limitations); Cantrell v. McMahon, 227 Fed. Appx. 321 (5th Cir. 2007) (finding no error where ALJ defined "moderate limitation" as meaning "the person can still perform the task satisfactorily").

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED**. The

Clerk is directed to enter final judgment in favor of the Commissioner consistent with

this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on November 2, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel